# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 3:08cr79/MCR

CLAUDIA CONSTANCE HIRMER and
MARK HIRMER

_____/

## ORDER ON EMERGENCY MOTION FOR RECONSIDERATION
## OF BAIL DENIAL PENDING SENTENCING

Defendants have filed an emergency motion for release pending sentencing (doc. 1138). An evidentiary hearing was held on the motion. After thorough consideration of the issues raised by defendants' motion and the evidence presented at the hearing, and for the reasons given, the court denies defendants' motion.[1]

The Bail Reform Act of 1984 governs release pending sentencing. *See* 18 U.S.C. § 3143(b). Section 3143(b) provides in pertinent part that a person who has been found guilty of an offense shall be detained unless the court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the community or another person if released. Under the statute, a person's conviction is presumed correct, and it is the defendant's burden to overcome that presumption by satisfying the above criteria. *United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir. 1985), *cert. denied*, 479 U.S. 1018, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986).[2]

---

[1] The bases for the court's ruling were explained on the record at the conclusion of the hearing.

[2] The law prior to 1984 was different. The former version of the statute, the Bail Reform Act of 1966, contained a presumption in favor of release, notwithstanding a conviction, such that a person was entitled to bail unless the government could show that the person posed a risk of flight or danger to the community or another person. *See Giancola*, 754 F.2d at 900-01. Congress' intent in repealing the earlier version of the statute in favor of the 1984 Act was to limit substantially the number of persons released pending sentencing and appeal. *Id.; United States v. Powell*, 761 F.2d 1227, 1232 (8th Cir. 1985).

Although the court acknowledges and accepts the defendants' strong family ties,[3] the court cannot find by clear and convincing evidence that defendants would not pose a serious risk of nonappearance if released. Although defendants were compliant with the terms and conditions of their release bond before and during trial, their circumstances have dramatically changed since the jury's guilty verdict on all counts of the indictment, as they now face the possibility of lengthy prison sentences. Moreover, the defendants have notable connections to the country of Panama, which extend back many years, including associations with attorneys and business associates together with financial holdings, such as real estate and bank accounts.[4] The court notes that this is the same country the defendants' close friend and business partner, David Struckman, fled to after learning he was under investigation by the Internal Revenue Service for his activities in connection with Global Prosperity Institute, a predecessor to the defendants' company, Pinnacle Quest International ("PQI"). Evidence adduced at the hearing and trial in this case showed that defendants wire transferred $100,000 to David Struckman while he was in Panama and also spent another $25,000 on his behalf for a passport in his name just two weeks after he was indicted by a federal grand jury of conspiracy to defraud the I.R.S., also during the time Struckman was living in Panama.

Additionally, the court has serious reservations about the defendants' willingness to abide by a release order with conditions, were one to be entered. During the recent month long trial of the defendants and seven co-defendants, the court heard overwhelming evidence of these defendants' complete and utter disdain for the government and its laws. The trial was replete with evidence of the defendants' willful disregard of the law and unwillingness to accept the authority of the government over them, including the court's authority. Defendants' counsel summed it up best in closing argument when he explained

---

[3] The defendants have six adult children, with whom they share a close, loving relationship.

[4] Another associate of the defendants, who was named in the indictment in this case, fled to Costa Rica and is awaiting extradition to the United States. Another defendant who fled while on pretrial release was captured in the United States and brought to trial along with the defendants. This defendant was also found guilty on all charges.

Case No.: 3:08cr79/MCR

to the jury that the defendants sincerely believe that the three branches of government are subverting the law, specifically the Constitution. The evidence at trial was consistent, particularly insofar as the PQI materials and presentations "educated" people to believe that the federal courts were part of the fraud being committed on Americans. Considering that this court's authority stems directly from the same law the defendants believe the court is subverting, the undersigned finds it most difficult to accept that the defendants would respect the authority of this court and its orders.

Further, given the substantial evidence introduced at trial and also at the hearing, of defendants efforts to conceal, evade, and deceive, the court has reservations about the credibility of their statements to the court that they would in fact comply with the court's orders if released. During the hearing and in response to a question from the government's attorney about what income or finances she and her husband had been relying on for necessities since the indictment, Mrs. Hirmer testified that they had used money given to them by her mother. She was then presented with evidence of wire transfers to her local bank account from a bank account in Panama since the indictment, which she did a very poor job of explaining. Additionally, the Hirmers both continued to deny knowledge of the $25,000 payment made on behalf of David Struckman for a passport in his name, despite clear evidence from their own records reflecting they had approved payment of the items from their account.[5] Finally, the government introduced evidence at the hearing showing further efforts to conceal bank account information contained in the defendants own records.

In summary, given defendants' overseas ties and holdings together with their lack of responsibility and utter disdain for the government and its laws, the court would find the defendants presented a serious risk of nonappearance; however, at a minimum, the court cannot find by clear and convincing evidence they do not pose a risk of nonappearance which is the standard the court must apply. Also, given the evidence at trial of the PQI promotion of the concept of "sovereignty" and Mrs. Hirmers' own testimony during the trial

---

[5] The $25,000 actually was comprised of two payments on the same day, one for $20,000 and the other for $5,000.

Case No.: 3:08cr79/MCR

of her belief in that concept, the court cannot find by clear and convincing evidence that she does not pose a risk of danger to the community if released.[6]

For the foregoing reasons, Defendants' Emergency Motion for Reconsideration of Bail Denial Pending Sentencing (doc. 1138) is DENIED.

**DONE** this 6th day of April 2010.

                       s/ *M. Casey Rodgers*
                       **M. CASEY RODGERS**
                       **UNITED STATES DISTRICT COURT**

---

[6] According the evidence, "sovereign citizens" are not subject to the laws of the "corporate United States."

Case No.: 3:08cr79/MCR